LINDA CLAXTON, State Bar No. 125729
linda.claxton@ogletreedeakins.com
BRANDYN E. STEDFIELD, State Bar No. 225357
brandyn.stedfield@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
633 West Fifth Street, 53rd Floor
Los Angeles, California 90071
Telephone: (213) 239-9800
Facsimile: (213) 239-9045

Attorneys for Defendant
RBC CAPITAL MARKETS CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LISA CARTER, | Case No. 2:09-CV-06252-R-AGR |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| RBC CAPITAL MARKETS CORPORATION, | |
| Defendant. | |

# UNCONTROVERTED FACTS

1. RBC has implemented and strictly adheres to policies prohibiting harassment and discrimination in the workplace.

2. RBC has promulgated an Equal Employment Opportunity and Non-Discrimination Policy explicitly prohibiting any form of discrimination in the workplace.

3. Every employee is expected to abide by the Non-Discrimination Policy and to report any suspected violation of the Policy.

4. Plaintiff began work at RBC in Beverly Hills, California (specifically its predecessor Sutro & Company) in 1996 as a Stock and Bond Cashier with an official job title of Senior Complex Operations Associate.

5. During her tenure with RBC, Plaintiff also worked as an Administrative Manager.

6. Plaintiff ultimately, and on her own initiative, went back to working as a Stock and Bond Cashier, the position she held until she went out on a leave of absence on approximately January 28, 2008.

7. At the end of her tenure, Plaintiff reported to Ken Sullivan, the Branch Manager, and was supervised by John Pakladowski, Operations Manager, and Fiona Scott, Administration Manager.

8. Plaintiff testified that she never encountered any difficulties in her interactions with managers nor did any of her managers ever treat her unfairly.

9. Plaintiff testified that during her tenure with the Company she took leaves of absence in 2006, 2007, and 2008.

10. In 2006, Plaintiff took a workers' compensation leave of absence for approximately four months in connection with carpal tunnel treatment and therapy.

11. In 2007, Plaintiff took another extended leave of absence due to another personal health issue.

12. Plaintiff testified that she never had any difficulty in connection with

her return to work from the first two leaves of absence and was never denied a leave of absence during her tenure with RBC.

13. In January 2008, Plaintiff took a leave of absence in connection with a shoulder injury, related to the preexisting carpal tunnel, that ultimately necessitated surgery and resulted in an extended leave of absence.

14. Plaintiff admitted that she was informed around June 2, 2008, that she had exhausted her leave under the Family Medical Leave Act ("FMLA")/California Family Rights Act ("CFRA") as of April 28, 2008, and was being placed on a personal leave of absence for up to one year.

15. The letter provided to Plaintiff explicitly instructed Plaintiff and Plaintiff testified that she understood, that her job was no longer being held open and that once she was able to return that she would need to talk with Fiona Scott about potential job openings.

16. In 2008 and early 2009, RBC, as well as many financial institutions, experienced economic hardship in light of the downturn in the economy.

17. During this time, RBC began implementing business-wide cost containment measures.

18. As a result, in early February 2009, RBC laid off three employees in the general Los Angeles area, including two employees – Peter Pitts (Registered Client Associate) and Marilyn Glasser (Senior Client Associate) – at the Beverly Hills location.

19. During Plaintiff's leave of absence her duties were absorbed and performed by other existing employees, Paul Seifert, Linda Ewing and John Pokladowski.

20. Plaintiff admitted she has no knowledge as to whether anyone else was performing her former duties.

21. After nearly a year long leave of absence, Plaintiff turned in a doctor's note indicating that she was able to return to work on January 12, 2009.

22. Plaintiff contacted Fiona Scott, as required by the instructions given to her in the April 28, 2008 letter, and Scott informed Plaintiff that she needed to talk with Sullivan about her return to work.

23. In evaluating her return to work, it was determined that no position was available to return Plaintiff to as the Company had streamlined its operations, other existing employees had been performing Plaintiff's former duties and there were no other positions available.

24. As a result RBC did not have the capacity to reinstate her.

25. On February 10, 2009, Marie Campion, Senior Human Resource Generalist, informed Plaintiff that RBC could not reinstate her because there was no position available.

26. RBC continued to implement cost containment measures throughout 2009, which included consolidating its operations in California and not hiring into open positions.

27. RBC initially had complexes in San Francisco, Newport Beach and Beverly Hills, each of which provided services to several local branch offices.

28. In June 2009, the Newport Beach Complex became a branch location and the seven branches in the Newport Beach Complex were reassigned to the San Francisco, Beverly Hills and Phoenix Complexes.

29. Following the consolidation, the Beverly Hills location provided services to three additional branches.

30. In October 2009, one of the employees who absorbed Plaintiff's job duties, Paul Seifert, retired from RBC.

31. In spite of the consolidation and Mr. Seifert's retirement, no additional staff has been hired into the position previously held by Plaintiff.

32. Plaintiff testified that the only adverse action she was subjected to in connection with her employment was the failure to return her to work following the leave of absence.

33. Plaintiff opines that the failure to return her to work must be discriminatory because she never received negative performance reviews.

34. Plaintiff testified that she never considered the possibility that the failure to return her to work might be the product of economic factors.

35. Plaintiff's complaint also alleges that her disability discrimination claim is predicated on mental disabilities, including depression, anxiety and related symptoms and conditions.

36. Plaintiff admitted that the purported mental disabilities and symptoms occurred after her termination.

37. Plaintiff's complaint states that RBC made improper inquiry into the details and severity of Plaintiff's disability.

38. Plaintiff testified that the improper inquiries actually were allegedly "false accusations … that [her] position was not available for [her]."

39. Plaintiff does not even know who made the termination decision.

40. Plaintiff cannot even offer a name of any individual whom she thinks may have discriminated against her.

41. Plaintiff admits that she never experienced any problems with Sullivan, the decision-maker, and that he never made any derogatory comments about her medical condition or her leave of absence.

42. Plaintiff testified that Fiona Scott and John Pakladowski, her two former supervisors, always supported her, always treated her fairly and she had no reason to believe that they would intentionally hurt her.

43. Plaintiff admitted that she did not need any accommodation to assist her in performing her job functions.

44. Plaintiff's failure to accommodate claim is predicated on her belief that she should have been offered severance pay as a reasonable accommodation.

45. Plaintiff contends she should have been allowed to return to work as a reasonable accommodation, notwithstanding the fact that her position had been

eliminated.

46. RBC had no position available for Plaintiff.

47. Plaintiff admitted she does not believe her termination was linked to retaliatory animus or on account of her medical leave.

48. When asked "[d]o you believe that RBC terminated your employment in retaliation or to punish you for taking medical leave," Plaintiff responded, **"[n]o, no."**

## CONCLUSIONS OF LAW

1. Plaintiff's First Claim for Disability Discrimination fails because Plaintiff cannot establish a *prima facie* case. Plaintiff exhausted her twelve weeks of protected leave under the California Family Rights Act on or around April 28, 2008. Defendant was not obligated to reinstate Plaintiff after her twelve month personal leave. Plaintiff produced no evidence of discriminatory motive or any evidence that Defendant's failure to reinstate her after almost a year off of work and after company downsizing was motivated by her exercising her protected leave or by any other discriminatory motive. *Scotch v. Art Institute of California Orange County, Inc.*, 173 Cal.App.4th 986(2009). Plaintiff's failure to accommodate claim also fails because her requested accommodation of severance pay is not a reasonable accommodation that an employer is required to provide because it would not have allowed her to perform the essential functions of her job.

2. Plaintiff's First Claim for Disability Discrimination also fails because a reduction in force and business consolidation is a legitimate reason not to reinstate Plaintiff into her old position or a different position. *Guz v. Bechtel National, Inc.*, 24 Cal 4th 317 (2000).

3. Plaintiff's First Claim for Disability Discrimination because Plaintiff has no evidence of pretext. Plaintiff presented no evidence that the failure to reinstate her after nearly a year off from work was somehow motivated by her exercising her protected medical leave or by any other discriminatory motive.

4.     Plaintiff's Second Claim for Medical Leave Discrimination and/or Retaliation fails because Plaintiff cannot establish the requisite elements to support such a claim. Plaintiff presented no evidence linking her protected leave to Defendant's position to terminate her, and Plaintiff testified that her leave of absence was unrelated to her termination.

5.     Plaintiff's Third Claim for Wrongful Termination in Violation of Public Policy fails because it is duplicative of the other claims. This claim is derivative and defendant on her discrimination and retaliation claims and, therefore, fails in conjunction with those claims.

DATED: May 18, 2010          By: _____
                                  Honorable Manuel L. Real
                                  United States District Judge